May it please the Court again on behalf of Ms. Ward, in this case is a claim for accidental benefits under an accidental death and dismemberment policy, and the, as the record indicates, that in this particular case, Ms. Ward's husband had suffered an injury and was being treated for this injury with surgery and then subsequently treated with pain medication, and the evidence showed that there had been no abuse of this medication, but over the years of time, he died from the accumulation of the medications in the system and was determined to be an accidental death, and under, they had an accidental policy for either death or dismemberment, and she made a claim for that, and that claim has been denied, and the... Well, you'll agree with me, won't you, Counselor, that you really, your client really couldn't make a claim for coverage for the mining accident? Correct, yeah. And that's because it's been six years? Yeah. So we're really talking about whether a treatment of a medical condition and a death occurring from the treatment of a medical condition could be an accidental death. Isn't that the big question? Yes, it depends on how, you could argue that, you know, pain... You're not going to go back to the mining accident. No, no, I'm sorry. So we're really talking about the treatment of this medical condition, which now we have to see if the insurance policy applies. I called it medical condition so that I wouldn't call it disease, which I knew you'd react to, or I wouldn't call it bodily infirmity because you'd react again. I just called it medical condition. I think that's right. I mean, they're treating a symptom, actually, pain. But anyway, there's two provisions in the policy that we think make it an ambiguity that's quite clear, and that is that exclusion number three indicates that if something happened to you and you're taking medicine from a doctor as prescribed, and that something happens, you have an accidental death or injury, that you would be entitled, that would not bar you from... Wouldn't bar you from exclusion number three. Correct. Well, that's not a guarantee that it provides you coverage someplace else, or it's not barred by another exclusion. And that's what the dilemma is, I think, because medical... What dilemma? I mean, it's an exclusion. This happens to be an exclusion to an exclusion. But on what basis does it speak to what might be excluded by some other provision? Well, I think that when you read these two provisions, seven and three, together, that it is, to me, as a consumer, and not one who's probably read this numerous times at this point in time, that a consumer buying this policy would think that if something happened to them when they were taking medications as prescribed by their physician, they would be entitled to be covered by the policy. The flaw seems to be you don't read exclusions together. You match each exclusion against the coverage. Well, but if you do that, then number three makes no sense. It makes perfect sense. Number three doesn't require the narcotic or other drug to be the cause of injury. Basically, it's, I assume, designed to cover the insurance company. If you've got somebody who's high on drugs and does something to wander out into the street and get run over by a bus, dies for any reason. If you're using or taking narcotics, you're not going to be covered unless the drugs are prescribed. If you're taking a prescription drug and something unfortunate happens, this exclusion doesn't apply to you. Well, that's different than what's being talked about in exclusion seven, because exclusion seven talks about cause is due to. I can see that argument, and that makes some reasonable sense, except I don't think a person buying this policy would understand it that way. It seems to me that if you read exclusion number three, that if you are taking medication and you take it properly, that that's all right. Medical treatment under exclusion number seven is not described, but if you read this and a regular consumer, I would think, would think that if I take medication correctly and follow my doctor's advice, then I'm entitled to be covered if something happens to me. And number seven, on the other hand, talks about that if you have a disease or an illness that's being treated, then it doesn't describe that it would be the same thing. You're taking medication, have an accident, then you're not covered. And I think that it's hard for a person who buys a policy like this to understand that. And I think that's where the conflict in the language that's suggested to somebody who reads this would make it very hard for a consumer to understand that he didn't have coverage. If he's doing what the physician says he's supposed to be doing. Did you ever say anything to the district court or make the argument to the district court that a rational trier of fact could conclude that Mr. Ward was being treated for an injury and not a disease? I mean, there's a lot of things in this policy which we're going to be, we could focus on disease or bodily infirmity, but it seemed to me that in front of the district court you kind of conceded that this back injury was a disease. I don't think... I mean, I never saw the argument that this is not a disease. I mean, my worry is that I'm trying to put myself now in the shoes of the DJ who had this, and I appreciate that now you're telling me that Mr. Ward was being treated for an injury and not a disease. So I immediately went to the record to see if you'd ever made that argument to the district court, and I couldn't find it. I believe that we did, Your Honor, but I can't bring that to mind. I mean, my worry is that the district court focused on disease, and it seems to me the district court had a lot of places to go besides disease. And so, therefore, if one didn't argue that it wasn't a disease, the district court would then pound on disease, go find the definition of disease, and try to make his decision. If you just said, well, this isn't a disease, this is an injury, or this isn't a disease, this is some other thing, it would have been easy to look at bodily infirmity, for instance. Right. Well, I think, I mean, the record, the doctor affidavit describes it as he talks about the injury and then the subsequent treatment for that, and that when the patient was under his care, he had referred him out for surgery, and he then took up care after the surgery, which was, again, treating him for pain with the Oxycodone and the Percocet or the Methadone. And I guess the next question that I have is generally, I'm looking for the purpose of this contract. Why would a person buy such insurance? Sure. And I guess I'm trying to figure out, there's no question it's for accidental death or dismemberment, but I guess I'm trying to figure out why one would take this particular policy if one was looking for coverage for death resulting from medication on a lingering injury after the accident. Well, there's nothing in this policy which would seem to relate to that. The reason I ask that question, because you're really asking me to go against my sister circuits, the Fifth, Sixth, and the Seventh, who suggest that you got no coverage here. And they focused on what the purpose of the insurance is. Well, this is a, and I don't know if this is in the record, but my understanding is that they had this policy for a number of years even before he was injured. So it had been a policy that the family had had for a long period of time. So... Well, the classic case, though, would be you're hit by a bus. Yeah, right. This is an unusual part of what probably happens in these things. This is not a life insurance policy, which would cover you no matter how you died. Right. Well, unless you committed suicide within typically a year or two. Right. But the, I would say that the, which was not really brief, but I mean, we did suggest one of the purposes of Paragraph 7, and I think that, and looking at other cases that don't have conflicting exclusions, but that is to prevent, you know, cases where somebody is injured and then when they're in the hospital somebody puts the wrong drug into, when they're having transfusions and so forth and die and so forth. I think that's what generally this is, what that aspect is designed for. Because I can't think of too many other circumstances where it would be, something would happen to somebody where they're being treated in the long term for this. So, but I think that, and they don't define, there is no definition of medical treatment, and I think that if that was defined then it would make it clear, but that's ambiguous too is what they mean by that. So, we think that the plaintiff, I think that, and again, I think it's imperative that you look at it from the standpoint of somebody buying this off the street. And I would say that this is an aid accident death and dismemberment policy, and the cases that have been cited by the defendant are basically general commercial liability policies when they talk about the interpretation of the different exclusions. Thank you. Thank you and good morning. May it please the Court. My name is Brian Keeling. I represent the Apelli Stonebridge Life Insurance Company, which was formerly known as J.C. Penney Life Insurance Company when it issued the policy at issue here. There is one primary issue for this Court to decide on this case, and that is whether two exclusions in an insurance policy must be harmonized with each other to determine whether one of the exclusions is ambiguous when determining whether one of the exclusions applies. Washington law is clear on this issue. Exclusions do not need to be harmonized with each other. This issue was decided by the Washington Court of Appeals in the 1984 decision of Harrison, Plumbing, and Heating. There are no Washington decisions that hold otherwise. Washington law is well settled on that issue. Therefore, the district court's summary judgment should be affirmed. Just to recap some of the background facts of this case, Mr. Ward did die from an acute combined methadone and oxycodone overdose. That was the cause and manner of death that was stated in the death certificate and the conclusion reached by the medical examiner who performed the autopsy after his death. He was also designated as an accidental death. He was designated as an accident, Your Honor, and there's no dispute that it was an accident. Okay, so you're not claiming he committed suicide. No. Mr. Ward was prescribed those medications to deal with pain in his lower back following surgery for lower back pain. He was insured under the accidental death and dismemberment policy, and Judge Gilman, as you pointed out, this is not a life insurance policy. Accidental death policies typically provide much narrower types of coverage, much narrower categories of benefits, and consequently accidental death policies typically carry with them a much lower premium payment that corresponds with corresponding benefit amounts for life insurance policies. In this case, the premiums were $7.95 a month for coverage that would have provided a million-dollar benefit under certain circumstances. To address a question that I think Judge Smith had initially as to why someone would purchase this policy, this policy appears to have been, I don't know that this is the case, but the initial premium was paid by Capital One Bank for the first three months. What is often the case is that these policies are offered to credit card companies or borrowers on debts, and they can continue the coverage after an initial premium is paid by a credit card company or bank issuing a credit card. That appears to be what happened here. There are two exclusions that we've discussed in this matter. The first is the medical treatment exclusion, and the language of that exclusion states that no benefit shall be paid for a loss or injury that is due to disease, bodily or mental infirmity, or medical or surgical treatment of these. There was no dispute at the trial court level, at the district court level, that Mr. Ward's pain arose from a disease or bodily infirmity. As Judge Smith pointed out and questioned my colleague, there was not an issue raised or an argument raised as to whether this was an injury as opposed to a disease or bodily infirmity. I wouldn't think an average person would consider a back condition like the plaintiff had here as a disease. The pain would more satisfy the bodily infirmity definition. That would be something that, I want to make sure I pull the correct definition, something that materially impairs the body's processes. So, in this case, lower back pain that would prevent somebody from moving or otherwise interacting would be classified as a bodily infirmity. Right, and that isn't the basis the district court relied on. It is not, and I understand, and I do understand that. But I understood that the reason the district court went where it did was because the counselor did not even suggest that it was an injury or did not even go after bodily infirmity but just kind of gave that it was a disease. That's correct. Had this been characterized as an injury as opposed to a bodily infirmity or disease, the language within the definition of injury would still have precluded this coverage under this case. Because of bodily infirmity? No, because the definition of injury harkens back to, to qualify it as a covered event as an injury, that injury must cause the loss directly and independently of all other causes. Well, no, that's where you're going, because it defines injury means bodily injury caused by an accident. The problem is that policy doesn't define accident. It does not, and there's jurisprudence in this circuit and many others in determining what constitutes an accident, both for purposes of these types of policies and for other types of insurance policies. Well, couldn't we say, well, the coroner decided it was an accident here, so if this was an injury, bodily injury caused by an accident, it would be coverage, wouldn't it? Well, Stonebridge does not dispute that this was an accident for purposes of, especially for purposes of determining whether an injury occurred. What should be looked at is in the, I believe it's in the second half of the definition of injury, where you get past the bodily injury caused by an accident, and it defines it as a loss that must occur directly and independently of all other causes. So an accident can be an injury, but not all accidents are injuries. They have to be an accident that is the direct cause of the loss, independent of all other causes. In this case, the other causes were subsequent surgery, subsequent pain, subsequent treatment of pain, and the overdose on pain medications. There was a second exclusion that Stonebridge relied on at the court before, at the district court, and that is the drug exclusion operating independently of the medical treatment exclusion. The district court found that there was a question of fact based on conflicting opinions of people who were considered to be experts, and that's not on appeal. It doesn't say that.  The doctor did prescribe the medication. You could argue that, well, but he wasn't taking them as prescribed, but that raises a genuine issue of material fact. It does, and that's what the trial court found. The trial court found the difference between Stonebridge's expert, who said that based on blood levels, it was clear that these blood levels could not have been achieved if someone had been taking these as prescribed, and the insurance physician who gave kind of a loose opinion that sometimes drug levels can accumulate in the body and that could account for the excess drug levels. So you're relying solely on exclusion seven. We are. Okay. Is there any case that's directly comparable that's right on point that you could say? Not in the accidental death arena, Your Honor. In our circuit? Are you talking or any circuit? I am not aware of any circuit case. What about Senkir versus Hartford Life and Accident? Which case? Senkir, S-E-N-K-I-E-R, versus Hartford Life and Accident Insurance. And what circuit is this? Seventh Circuit case, 1991, 948 Fed Second. This is where the Seventh Circuit decided a similar type policy was not covered. May I review my cases for a moment? It helps you, so I don't know that you've got to go through it. Okay. I was just trying to suggest. I was not aware of the Senkir case, Your Honor, and it may be that I don't know if the exact language of both exclusions would have been the same in that case. I do know that there are several different versions of what here is exclusion three, the drug exclusion. There are several versions of that in policies that are issued across the country, mostly to comply with state insurance commissioner requirements on policy language. And, again, I want to address the issue of harmonizing two exclusions because that appears to be the appellant's primary argument here, that the medical treatment exclusion can be found to be ambiguous when it's read with the drug use exclusion. And, again, under the Washington Court of Appeals case of Harrison, Plumbing, and Heating from 1984, there the court, even though this was not an accidental death policy case, was a case that involved the argument that two exclusions should be read together to result in the finding that one of them was ambiguous, therefore unenforceable. The Court of Appeals there stated, and, again, that case has not been overturned, there's no contrary Washington case, stated that that argument assumes that exclusions must be harmonized with each other. That is not true. Each exclusion refers to the risk insured against in the coverages and not to other exclusions. And each exclusion is to be read with the insuring agreement independent of each other exclusion. Subsequent cases in Washington or interpreting Washington law have relied on the Harrison opinion, again, all in types of insurance other than accidental death insurance, but this is a principle of Washington insurance law that has not been challenged or changed since Harrison. Anything else you want to cover? You're not required to use all your time, honestly. Thank you, Your Honor. I appreciate that. I did want to just briefly, I'll do it briefly because it's repeating what you said already, Your Honor, Judge Clifton, and that is there's not an inherent conflict between Exclusion 3 and Exclusion 7 because of the different language that's used in those two exclusions. In the medical treatment exclusion, Exclusion 7, that exclusion applies when the loss is due to the medical treatment, whereas Exclusion 3, there is no causal requirement. There's no causal connection required because the language there is taking or using, and if it's a loss that occurs while the person is taking or using a drug, then that exclusion kicks in. The exception to that exclusion, of course, is if the drug has been prescribed by a physician. That interpretation is what renders Exclusion 3 still a workable and applicable exclusion in circumstances other than this one. It still may, again, it may apply in this case aside from the question of fact as to whether the insured here was taking the drugs as prescribed. Other than that, if you have no other questions, I would relinquish my time. Thank you. Rebuttal. I think that the only comment I would have would be that generally clauses in insurance policies have to be read to be consistent. And again, I think that the people that would be reading these policies that purchase them, that under the policy that they have, they would believe that it would be even difficult for anybody to understand that if something happened by taking medications, that Number 3 would, Number 3 allows them to do that. That in itself is a definition of medical treatment that is allowed and I see in paragraph Number 7 does not have any definitions of what they mean by treatment. And I think that that's what the ordinary consumer would look for and for protection of this. And it is an accidental policy and it has a lot of different provisions, but this part of it is just a very small part of it. This is not an accidental. As mentioned, it had large coverage in this, but this is not a million-dollar coverage policy. This is a much different thing that we're talking about. But it was a benefit that this family had and should be able to obtain for having this policy under these circumstances. Thank you. Thank you. We thank both counsel for the argument. The case just argued is submitted. That concludes our calendar for today, so we are adjourned. All rise.
judges: Gilman (6th Cir.), Clifton, Nr Smith, Cjj